### In re Gerald B. DEYO (Town of Manchester, Appellant)

[670 A.2d 793]

No. 94-422

October 26, 1995. Appellant Town of Manchester appeals the Bennington Superior Court's ruling that its ordinance banning on-premise signs advertising the sale or lease of real estate violates the First Amendment to the United States Constitution. We affirm.

Appellee Gerald Deyo owns real property in the Town of Manchester and uses this property for business purposes. He operates a mobile home park and leases commercial space for office or retail purposes. Appellant has a comprehensive sign ordinance, which it adopted in February 1986 pursuant to 24 V.S.A., chapter 117, after public hearings. The purposes of the sign ordinance are:

> to help preserve and improve the existing attractive aspects of the Manchester environment, to promote the welfare, conve-

nience and safety of its inhabitants and visitors, to conserve the value of property, and to encourage a style and scale of outdoor advertising that is compatible with a tourist-oriented economy and the more attractive features of the Manchester townscape.

To achieve these purposes, the ordinance limits the number, type, and location of signs. All off-premise signs are prohibited, and only one freestanding, on-premise sign is permitted on each commercial property. The ordinance contains exemptions for certain signs, such as sale, auction, special event, directional, window, and political signs. It also expressly prohibits certain types of signs, such as internally illuminated, fluorescent, construction, and real estate signs. Appellee challenged only the section of the ordinance that prohibits signs "advertis[ing] the sale or lease of real estate and . . . exhibited on such real estate."

After receiving a permit from appellant, appellee erected a sign in front of the office building on his property. His sign is one of only a "handful" of signs in the Town which use removable letters. In early July 1990, appellee's commercial tenant vacated its commercial space. Shortly thereafter, appellee changed the lettering on his sign to advertise the vacant space as available for lease. His sign said "office retail space" and included his telephone number.

On July 12, 1990, appellant's zoning administrator sent a notice of violation to appellee stating that the sign violated the section of the ordinance which prohibited on-premise signs advertising the sale or lease of real estate. Appellee requested and received a stay of enforcement while he appealed his violation to the Town of Manchester Zoning Board of Adjustment. The Board upheld the zoning administrator's decision. Appellee further appealed the Board's decision to the Bennington

Superior Court, claiming that the Town's sign ordinance violated the First Amendment to the United States Constitution. After a bench trial, the superior court concluded that appellant's sign ordinance was unconstitutional.

Appellant contends that the superior court misapplied the commercial speech test. The court applied the four-prong test for commercial speech first enunciated by the United States Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), and recently reaffirmed in *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 113 S. Ct. 2696 (1993).

> "At the outset, [courts] must determine whether the expression is protected by the First Amendment. [1] For commercial speech to come within that provision, it must at least concern lawful activity and not be misleading. Next, [courts] ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, [courts] must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest."

*Edge Broadcasting*, 509 U.S. at 424, 113 S. Ct. at 2702 (quoting *Central Hudson*, 447 U.S. at 566). This appeal concerns only the fourth prong of the *Central Hudson* test.

Appellant argues that the superior court misapplied the *Central Hudson* test when it balanced public benefit and private cost to evaluate the fit between legislative means and ends. This argument is based on the court's conclusion that "the actual benefits to traffic safety and esthetics which are derived from this total prohibition of real estate sign advertising are too remote when weighed against the cost to the appellant of this prohibition." An inquiry into the means-ends fit with respect to an individual challenger is appropriate under the fourth prong of the *Central Hudson* test.

In *Edge Broadcasting*, the Supreme Court said that whether the costs and benefits of the challenged regulation are justified with respect to the individual challenger is a relevant inquiry under the fourth prong of the *Central Hudson* test. 509 U.S. at 427, 113 S. Ct. at 2704. In *Edge*, federal law prohibited a radio station operating in North Carolina, but with a significant portion of its listeners in Virginia, from broadcasting advertisements for the Virginia lottery because North Carolina did not have a lottery. The radio station brought a First Amendment challenge against this federal law. The Supreme Court first criticized the lower courts for examining the means-ends fit with respect to the individual challenger under the third prong of the *Central Hudson* test. The Court then continued: "This is not to say that the validity of the statute's application to Edge is an irrelevant inquiry, but that issue properly should be dealt with under the fourth factor of the *Central Hudson* test." *Id.* at 427, 113 S. Ct. at 2704. In conducting its analysis under the fourth prong, the Court noted that barring Edge from broadcasting lottery advertisements reduced exposure to radio lottery advertising by 11% in the relevant listening area of North Carolina. This result satisfied the fourth prong of the test because the marginal reduction in exposure to lottery advertising sufficiently served the federal purpose of the law — accommodating nonlottery states' interest in discouraging participation in the lottery. Here, the superior court could consider the means-ends fit with respect to the plaintiff without misapplying the *Central Hudson* test.

The superior court did not limit its

analysis of the costs and benefits of the ordinance with respect to only appellee; it also considered the costs to others in the same position. Appellant had the burden of affirmatively establishing that the means-ends fit is reasonable and that the "scope [of the restriction] is 'in proportion to the interest served.'" *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). In determining whether appellant had satisfied its burden, the court first concluded that the sign ordinance substantially limited property owners' ability to market their property because the alternatives available — listing with real estate agents or advertising in the classified section of newspapers — were less than satisfactory. See *Linmark Assocs. v. Township of Willingboro*, 431 U.S. 85, 93 (1977). Earlier, in its analysis under the third prong of the commercial speech test, the court had concluded that, by permitting other types of signs that are distracting to motorists, the traffic safety benefits of the ordinance were undermined. The court also concluded that a more finely tuned ordinance would serve appellant's interest in preventing the proliferation of signs while allowing limited forms of real estate advertising. After weighing the cost of the sign ban to owners of real estate in the town with the remote traffic safety and aesthetic benefits derived from the sign ban, the court concluded that the appellant had failed to affirmatively establish the reasonable fit required by the *Central Hudson* test.

The superior court analyzed the means-ends fit from both a narrow and a broad perspective, and its analysis comported with the *Central Hudson* test. Therefore, its conclusion was not error.

*Affirmed.*